IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**U.S. BANK TRUST COMPANY,**
**NATIONAL ASSOCIATION,**
a national banking association, in its capacity
as Trustee pursuant to the Indenture
herein referenced,

      Plaintiff,

v.                                    Case No.:

**CLEARWATER CAY COMMUNITY**
**DEVELOPMENT DISTRICT,** a Florida
community development district,
**BOARD OF SUPERVISORS OF**
**CLEARWATER CAY COMMUNITY**
**DEVELOPMENT DISTRICT**,
**DONALD DWYER**, individually
and in his capacity as Supervisor of
Clearwater Cay Community Development District,
**PATRICK O'MALLEY, Sr.,** individually
and in his capacity as Supervisor of
Clearwater Cay Community Development District, and
**STEVEN WHITEHURST**, individually and in his
capacity as former Supervisor of
Clearwater Cay Community Development District,

      Defendants.
_____/

## COMPLAINT

     Plaintiff U.S. Bank Trust Company, National Association, a national banking association

in its capacity as Trustee pursuant to the Indenture herein referenced (the "**Plaintiff**" or

"**Trustee**"), by and through its undersigned counsel, brings this Complaint against Defendants

Clearwater Cay Community Development District, a Florida community development district (the

"**District**"), the Board of Supervisors for the District (the "**Board**"), Donald Dwyer, individually

and in his capacity as Supervisor of the District ("**Dwyer**"), Patrick O'Malley, Sr., individually

and in his capacity as Supervisor of the District ("**O'Malley**"), Steven Whitehurst, individually and in his capacity as a former Supervisor of the District ("**Whitehurst**" and with the District, Board, Dwyer, and O'Malley, collectively, the "**Defendants**") and states as follows:

## THE PARTIES

### A.    The Trustee

1.    Plaintiff is a national banking association organized under the laws of the United States of America and having its principal place of business in the State of Oregon, and serves as trustee under the Indenture as described herein. Pursuant to 28 U.S.C. § 1348, Trustee is a citizen of Oregon for purposes of diversity jurisdiction because it designates Portland, Oregon, as its main office in its articles of association.

2.    The Trustee brings this action in its capacity as trustee under that certain Master Trust Indenture between the District, and Wachovia Bank, National Association (the "**Original Trustee**"), as original trustee, dated as of December 1, 2005, the Trustee being the successor-in-interest to Original Trustee (the "**Master Indenture**"). The Master Indenture has been amended by that certain Second Supplemental Trust Indenture dated November 1, 2006 (the "**Second Supplemental Indenture**"), and by that certain Third Supplemental Indenture dated as of October 1, 2008 (the "**Third Supplemental Indenture**") (the Master Indenture, Second Supplemental Indenture, and Third Supplemental Indenture collectively, the "**Indenture**"). A true and correct copy of the Indenture is attached as **Composite Exhibit A.**

### B.    The District

3.    Defendant District is a local unit of special-purpose government established pursuant to the Uniform Community Development District Act of 1980, Chapter 190, Florida Statutes (the "**Act**"). The Act was adopted to provide for the establishment of independent special

districts as an alternative method of managing and financing basic services for community development and to provide for the uniform operation of the districts so formed.

4.      The District was formed pursuant to the Act by adoption of Ordinance No. 7515-05, as amended, by the City Commission of the City of Clearwater, Florida on September 15, 2005 (the "**Formation Ordinance**").

5.      The geographic area of the District includes approximately 33.7 acres of land and includes within its boundaries three general areas of development.  The District is a party to the Indenture with Trustee.

**C.      Board of Supervisors and Individual Defendants**

6.      Defendant Board is the governing body of the District, comprised of members elected pursuant to the Act, and the Board has the authority and obligation to levy special assessments against lands within the District. Alan Glidden, James K. Mellon, Paul Feaster and Defendants Dwyer, and O'Malley are the current members of the Board.

7.      Defendant Dwyer is a current member of the Board and a resident within the District with a property address of 2755 Via Capri, Unit 1224, Clearwater, Florida 33764. Defendant Dwyer has taken actions with respect to the matters herein alleged both in such board-member capacity and in an individual capacity entirely inconsistent with his role as a member of the Board.  Defendant Dwyer's residence is owned by his wife, Ann Cameron, who is a member of the homeowners' association, Grand Venezia COA, Inc., a Florida corporation ("**Grand Venezia**"), an entity whose interests are adverse to those of the District.

8.      Defendant O'Malley is a current member of the Board and a resident within the District with a property address of 2731 Via Capri, Unit 929, Clearwater, Florida 33764. Defendant O'Malley has taken actions with respect to the matters herein alleged both in such board-member

capacity and in an individual capacity entirely inconsistent with his role as a member of the Board. Defendant O'Malley is also a member of Grand Venezia, an entity whose interests are adverse to those of the District.

9.      Defendant Whitehurst is a former member of the Board and a resident within the District with a property address of 2755 Via Capri, Unit 1210, Clearwater, Florida, 33764. Defendant Whitehurst has taken actions with respect to the matters herein alleged both in such board-member capacity and in an individual capacity entirely inconsistent with his role as a member of the Board. Defendant Whitehurst is also a member of Grand Venezia, an entity whose interests are adverse to those of the District. Whitehurst resigned from the Board effective September 28, 2022.

10.     Collectively, Defendants Dwyer, O'Malley, and Whitehurst are referred to herein as the "**Individual Defendants**".

## JURISDICTION AND VENUE

11.     This is an action for damages in excess of $75,000.00, exclusive of interest, fees, and costs.

12.     The Court has general personal jurisdiction over the District. In addition, this Court has personal jurisdiction over Defendants pursuant to Section 48.193(1)(a)(7), Florida Statutes, because this action arises from breaches of contractual obligations that occurred in Florida concerning a contract governed under Florida law.

13.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff, as Trustee under the Indenture, has the unqualified right to hold, manage, and dispose of assets and is the real party in interest to this litigation. The Trustee is a citizen of the State of Oregon. 28 U.S.C. § 1348.

14.     Defendant District is a citizen of Florida.  The District is a citizen of Florida for purposes of diversity jurisdiction and serves as a local unit of special-purpose government that is not the State of Florida or so intertwined with the State of Florida that it is an "arm" or "alter ego" of the State of Florida.  The Defendant District has the power to be sued in its own name, can be impleaded in any court of competent jurisdiction, has the power to contract in its own name, has the power to acquire or dispose of property in its own name, and possesses characteristics of a body corporate. *See* Florida Statute §§ 190.002(1); 190.011(1)-(11).

15.     Defendant Board is a citizen of Florida for purposes of diversity jurisdiction.

16.     Defendant Dwyer is a citizen of Florida for purposes of diversity jurisdiction.

17.     Defendant O'Malley is a citizen of Florida for purposes of diversity jurisdiction.

18.     Defendant Whitehurst is a citizen of Florida for purposes of diversity jurisdiction.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims contained in this Complaint occurred in this judicial district and a substantial part of property that is subject to this action is situated in this judicial district.

20.     This Court has federal question jurisdiction over the subject matter of claims brought under 42 U.S.C. §§ 1988 and 1983 pursuant to 28 U.S.C. §§ 1331 and 1343(3). Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over claims arising from Florida law.

**<u>GENERAL ALLEGATIONS</u>**

**A.     District Financing and Bond Documents**

21.     The District is a Florida Community Development District, or "CDD," a local unit of special-purpose government created pursuant to the Act and the Formation Ordinance to

finance, acquire and maintain public land and infrastructure improvements benefiting developed land in its boundary.

22.     The District has at all relevant times been a CDD organized under Chapter 190, Florida Statutes, with authority to issue capital improvement revenue bonds to finance the acquisition of public lands and improvements.  In furtherance of its purpose and in accordance with the provisions of the Act and the Formation Ordinance, the District issued such bonds and acquired public land, utilities, roadways and public amenities benefitting developed land in the District (the "**Financing Plan**"), which it continues to own and maintain.

23.     The District, in furtherance of the Financing Plan and its obligations under the Act, adopted various resolutions that authorized the District's acquisition of certain public land and infrastructure improvements (the "**Capital Improvement Program**") and the issuance of capital improvement revenue bonds to finance the cost thereof, and levied special assessments on benefitting lands within the District to repay the bonds.

24.     More specifically, on November 28, 2005, the District adopted Resolution 2006-4 (the "**Master Assessment Resolution**"), which approved and confirmed the levy of capital special assessments in accordance with Section 190.021 of the Act on lands within the District to fund the cost of the District's Capital Improvement Program (the "**Master Assessments**") in accordance with the assessment methodology outlined in Exhibit B to the Master Assessment Resolution (the "**Master Assessment Methodology**"). A copy of the Master Assessment Resolution, which includes the Master Assessment Methodology, is attached as **Exhibit B**.

25.     Thereafter, the District entered into the Master Indenture with the Original Trustee pursuant to Section 190.017 of the Act, which, together with certain supplements thereto, governs the bonds issued by the District.

26.     In December 2005, the District issued its $30,650,000 Bond Anticipation Notes, Series 2005 (**"Series 2005 BANs"**), and the proceeds were used to fund costs of issuance and Capital Improvement Program-related expenses totaling $20,316,321 in acquisition and demolition costs. A true and correct copy of the Series 2005 BANs is attached as **Exhibit C.**

27.     In accordance with the provisions of Section 190.016 of the Act, the District filed a validation complaint in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida (the "**Circuit Court**"), pursuant to Chapter 75, Florida Statutes, in a case styled *Clearwater Cay Community Dev. Dist. v. State of Fla., et al*, Case No. 06-CA-00362-CI (the "**Validation Proceedings**") seeking validation of the Master Indenture, the issuance of its capital improvement revenue bonds in an amount not-to-exceed $75,000,000, including its Series 2006A Bonds (hereinafter defined), as well as approval of the Master Assessment Methodology on which the special assessments securing the Series 2005 BANs and Series 2006A Bonds were based.

28.     The Validation Proceedings culminated in the Circuit Court issuing an Order on Motions and Final Judgment dated September 6, 2006 (the "**Validation Judgment**"), in which the Circuit Court concluded that (a) the District was authorized to issue capital improvement revenue bonds to acquire the public lands and improvements in the Capital Improvement Program; (b) the Capital Improvement Program, including any capital improvements actually purchased by the District (the "**Capital Improvements**"), and financing thereof "constitutes a valid public purpose;" and (c) the District, through its Board, "has lawful power and authority to and has validly declared, assessed, levied, and may collect the [Master Assessments] to defray the costs of the [Capital Improvement Program]." A true and correct copy of the Validation Judgment is attached as **Exhibit D**. The Validation Judgment is a final judgment and is not subject to appeal.

29.     The Validation Judgment was never appealed and according to Florida Statute §
75.09 "such judgment is forever conclusive as to all matters adjudicated against plaintiff and all
parties affected thereby, including all property owners, taxpayers and citizens of the plaintiff . . .
and the validity of said bonds . . . or of any taxes, assessments or revenues pledged for the payment
thereof . . . shall never be called in question in any court by any person or party."

30.     After entry of the Validation Judgment, and acting in accordance with Section
190.017 of the Act, the District entered into the Second Supplemental Indenture governing the
issuance of Capital Improvement Revenue Bonds, Series 2006A, dated  as of November 1, 2006
(the **"Series 2006A Bonds"**), and the District issued the Series 2006A Bonds in the aggregate
principal amount of $33,840,000.

31.     The Series 2006A Bonds are at issue in this action.

32.     Section 703 of the Second Supplemental Indenture obligates the District to levy
special assessments in accordance with the Act in such manner to generate funds sufficient to pay
the principal of, and interest on, the Series 2006A Bonds.

33.     The proceeds of the Series 2006A Bonds were used to pay off the outstanding
indebtedness evidenced by the District's Series 2005 BANs, and to fund (a) certain additional costs
of the Capital Improvement Program, (b) costs of issuance of the Series 2006A Bonds, (c) a debt
service reserve fund for the Series 2006A Bonds (the "**Series 2006A Debt Service Reserve**
**Fund**"), and (d) designated interest installments on the Series 2006A Bonds for a set period of
time.

34.     As security for the Series 2006A Bonds, the District granted, conveyed, transferred,
assigned, and pledged to the Trustee all right, title, and interest of the District in and to the "2006

Pledged Revenues"[1] and the "2006 Pledged Funds and Accounts" (collectively, the "**Pledged Revenues and Funds**"), which includes all special assessments levied to secure repayment of the Series 2006A Bonds (the "**2006 Trust Estate**"). Upon such grant, the Trustee became the unqualified owner of said Pledged Revenues and Funds.

35.    By transferring the Pledged Revenues and Funds into the 2006 Trust Estate pursuant to the Indenture, the District transferred to the Trustee legal interest in and to the Pledged Revenues and Funds and transferred to the holders of the Series 2006A Bonds beneficial interest in and to the Pledged Revenue and Funds.

36.    Since the District's establishment of the 2006 Trust Estate, the District has no right, title, or interest to the Pledged Revenues and Funds.

37.    The 2006 Pledged Revenues and Funds include the special assessments referenced in the Master Assessment Resolution and constitute both (a) property rights granted to the Trustee as collateral for the Series 2006A Bonds and (b) rights and privileges secured by the Constitution and laws of the United States and the State of Florida.

38.    Pursuant to the Second Supplemental Indenture and the Validation Judgment, the Series 2006A Bonds were issued by the District, sold to Bondholders (as defined below) and the net proceeds used by the District for the purposes described in paragraph 33 above.

39.    The Series 2006A Bonds constitute the unqualified obligation of the District to make payment as provided therein and as provided in the Indenture.  As of this date, the Series 2006A Bonds remain outstanding, unpaid and in default.

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Second Supplemental Indenture.

### B.    Bond Covenants Mandating Assessments and Repayment

40.    The Act has been a cornerstone of financing public lands and infrastructure benefitting commercial and residential development activities in Florida since its adoption in 1980, and the mechanism for billions of dollars in funding to be made available by bond investors for the development of Florida communities and neighborhoods.  A fundamental principle of the Act is that CDDs, like municipalities, have elected officials and sweeping powers to borrow money through the issuance of tax-exempt and taxable bonds.  CDDs use the borrowed funds to finance, construct or otherwise acquire public land and infrastructure for the benefit of land within the district.  Bond indebtedness is typically repaid by the levy of special assessments on those properties within the district.

41.    Special assessments, which were the funding mechanism chosen for purposes of repaying the Series 2006A Bonds, once levied can be collected either by the district itself or by the tax collector through the "uniform method" provided for in Chapter 197 of the Florida Statutes. The Indenture provides for either collection method, though it was anticipated that collection of the special assessments would eventually occur by the "uniform method."  The integrity of this financing method for Florida communities is paramount and depends upon the action of the public officials representing the District's governing bodies fulfilling their obligations under the Act and under any governing indentures and agreements.

42.    The Indenture contains numerous covenants critical to preserving the special assessments and requiring the District to repay the Series 2006A Bonds in their principal and accrued-interest amounts owed in their entirety.  While the Indenture is attached in its entirety in Composite Exhibit A, relevant provisions are as follows (collectively, the "**Assessment Obligations**") (emphasis added):

10

a. Section 504 of the Master Indenture mandates that the District "will assess, impose, establish and collect the Pledged Revenues with respect to each Series of Bonds in amounts and at times *sufficient to pay, when due, the principal of, premium, if any, and interest on such Series of Bonds*."

b. Section 810 of the Master Indenture provides that  "[t]he District will assess, levy, collect or cause to be collected and enforce the payment of Assessments, Benefit Special Assessments and/or Maintenance Special Assessments which constitute Pledged Revenues for the payment of any Series of Bonds in the matter prescribed by this Master Indenture . . . *in amounts as shall be necessary in order to pay, when due, the principal of and interest on the Series of Bonds to which such Pledged Revenues are pledged . . . .*"

c. Section 804 of the Master Indenture provides that "[t]he District shall at all times, to the extent permitted by law, defend, preserve and protect the pledge and lien created by this Master Indenture and all rights of the Trustee hereunder against all claims and demands of all other persons whomsoever."

d. Section 703 of the Second Supplemental Indenture provides that "[i]n addition, and not in limitation of, the covenants contained elsewhere in this Supplemental Indenture and in the Master Indenture, the District covenants to comply with the terms of proceedings heretofore adopted with respect to the 2006 Assessments and to levy the 2006 Assessments and required payments under the 'true up mechanism' set forth in the assessment methodology reports adopted by the District in connection with the Assessments, *in such manner as will generate funds sufficient to pay the principal of and interest on the 2006A Bonds, when due.*"

11

43.    The Assessment Obligations require the District to levy, collect or cause to be collected and enforce the payment of Assessments in amounts necessary to pay the principal of, and interest on, the Series 2006A Bonds. The Assessment Obligations are mandatory – and not discretionary – on the District.

### C.    Project Completion and Principal Reduction of Bonds

44.    By 2008, the District adopted Resolution 2008-7, which declared complete that portion of the Capital Improvement Program already funded using proceeds from the Series 2005 BANs and the Series 2006A Bonds ("**Completed CIP**") on the basis that the District "cannot complete the Series Project in a sound and economical manner within a reasonable period of time as evidenced by the certificate of the Consulting Engineer."  The total investment in the Completed CIP was determined by the Consulting Engineer to be $21,199,675.39.  A true and correct copy of Resolution 2008-7 is attached as **Exhibit E.**

45.    Accordingly, as permitted by the Third Supplemental Indenture, the District used remaining proceeds from the issuance of the Series 2006A Bonds in the amount of $6,191,327 to (a) fund a working capital fund with $500,000; (b) replenish the Series 2006A Debt Service Reserve Fund with $800,000; and (c) redeem (with interest) $4,700,000 in principal amount of the outstanding Series 2006A Bonds ("**Partial Bond Redemption**").

46.    Pursuant to Section 170.08, Fla. Stat., and Resolution No. 2008-09, the District adopted that certain Second Supplemental Assessment Methodology for the Series 2006A Bonds, dated September 25, 2008, attached hereto as **Exhibit F** ("**Second Supplemental Methodology**"). After the Partial Bond Redemption, the outstanding principal amount of the Series 2006A Bonds was reduced from $33,840,000 to $28,615,000. The Second Supplemental Methodology was supplemental to, and consistent with, the Circuit Court validated Master Assessment Methodology.

47.    In 2010, despite the downsizing of the Capital Improvement Plan and the paydown on the Series 2006A Bonds pursuant to the Partial Bond Redemption, the District failed to pay the scheduled debt service payment due on the Series 2006A Bonds, which resulted in a default under the Indenture (the "**First Payment Default**"). The First Payment Default was caused by the failure of the certain landowners within the District to pay special assessments when due.

48.    Since 2010, additional payment defaults (each a "**Payment Default**" and collectively, together with the First Payment Default, the "**Payment Defaults**") have occurred each and every year.  The Payment Defaults continue to this day and the Trustee has not received funds from the District in an amount sufficient to pay principal and interest on the Series 2006A Bonds.

49.    Each Payment Default is a direct violation of the contractual obligation of the District as contained in the Indenture, including, without limitation, the Assessment Obligations.

50.    On April 15, 2015, as a remedial step toward partially resolving the Payment Defaults, the District agreed to convey a 6.068-acre tract of land originally acquired by the District as part of the Capital Improvement Program commonly referred to as the "Levitz" or "Commonwealth" parcel (the "**SPE Parcel**"), to a special-purpose entity ("**SPE**") created for the benefit of the holders (the "**Bondholders**") of the Series 2006A Bonds (the "**2015 Property Transfer**").  In exchange for the 2015 Property Transfer, the Bondholders forgave $2,675,000 in principal of the outstanding Series 2006A Bonds and the accrued interest thereon (the "**2015 Bond Cancellation**").

51.    The 2015 Bond Cancellation stemming from the 2015 Property Transfer had the corresponding effect of reducing the special assessments by $2,675,000.  As a result, the annual

capital assessments of landowners of the District, and the principal amount of the Series 2006A Bonds, were reduced.

52.     The Completed CIP, less the SPE Parcel, constitutes property of the District ("**District-Owned Property**") that it continues to own and benefit from to this day. The District-Owned Property consists of water, sewer and storm water management improvements; seawalls; landscape and hardscape improvements; parking; bay promenade; roadways and street lighting improvements; and land benefitting property owners of properties within the District.

53.     On December 8, 2016, the SPE sold the SPE Parcel, together with separately acquired certain neighboring real property comprised of 9.812 acres,[2] for the purchase price of $6,450,000 (the "**Recovered Assessments**").

54.     At the time of closing of the sale of the SPE Parcel, there were outstanding assessments on the SPE Parcel and the neighboring real property totaling $18,080,000, which assessments were pledged to pay debt service on the Series 2006A Bonds (the "**SPE Parcel Assessments**").

55.     The difference between the Recovered Assessments and the SPE Parcel Assessments – $11,630,000 – represented unrecovered assessments allocable to the SPE Parcel under the Master and Second Supplemental Assessment Methodologies and, thus, a loss to the Bondholders.

56.     Therefore, in order to consummate the SPE Sale, an additional $11,630,000.00 in principal amount of the Series 2006A Bonds was cancelled by the Bondholders as a prepayment-

---

[2] In June 2012, SPE acquired 9.812 acres of non-district owned real property from various landowners who had defaulted in paying their assessments.

in-kind of the special assessments allocated to the SPE Parcel as reflected in letter dated April 14, 2017 and attached hereto as **Exhibit G**.

57.    Even with these reductions (the Partial Bond Reduction, 2015 Bond Cancellation, 2015 Property Transfer, and SPE Sale), special assessments were not collected in an amount sufficient to pay principal and interest on the Series 2006A Bonds and the Payment Defaults continued.

### D.    Dissolution Action (Grand Venezia v. the District and the Bondholders)

58.    In 2016, Grand Venezia initiated a lawsuit against the District and the Bondholders in the Circuit Court, as Case No. 16-001584-CI (the "**Dissolution Action**") seeking, among other things, a declaration from the Circuit Court that the District should be dissolved and that the Series 2006A Assessments were improperly levied or, alternatively, that the District should undertake a "new and extensive assessment procedure."[3]    The Dissolution Action was an attempt by Grand Venezia, on behalf of certain individual members of Grand Venezia, including certain of the Individual Defendants, to free themselves from the obligation to pay Series 2006A Assessments pledged to repay the Series 2006A Bonds.

59.    The Trustee was not named as a party to, and has never been involved in, the Dissolution Action. In fact, the Circuit Court entered an order specifically holding, among other things, that (a) the Trustee is not an indispensable party to the Dissolution Action, (b) the Circuit Court's rulings in the Dissolution Action did not impair the Series 2006A Bonds, and (c) the

---

[3] In particular, Grand Venezia sought (a) a declaration that the District was "automatically dissolved" by statute and that title to a portion of District-Owned Property be vested in Grand Venezia; (b) an order refunding Series 2006A Assessments collected based on the alleged dissolution of the District; and (c) a declaration that the Series 2006A Assessments were improperly levied and should be refunded. Alternatively, Grand Venezia sought a declaration that the District should undertake a "new and extensive assessment procedure."

Circuit Court's rulings in the Dissolution Action did not adjust the Series 2006A Bonds or extend the term of bond payment (the **"Circuit Court Order"**), a copy of which is attached hereto as **Exhibit H.**

60.     On November 6, 2017, in the Dissolution Action, the Circuit Court entered its *Order Granting in Part and Denying in Part Motion for Partial Summary Judgment,* attached hereto as **Exhibit I ("Partial Summary Judgment")**, affirming that: (a) the District had the requisite authority to issue the Series 2006A Bonds; (b) financing the Capital Improvement Program constituted a valid public purpose; (c) the method of allocating the capital special assessments was valid in all respects; and (d) Grand Venezia was barred from challenging any matters adjudicated in the Validation Judgment.

61.     Subsequently, after a non-jury trial on the remaining issues not resolved by summary judgment, the Circuit Court in its oral ruling rendered on April 26, 2018, and its corresponding written order issued on August 9, 2018, further ruled in favor of the District and the Bondholders concluding *inter alia* that prior to the transfer of the SPE Parcel, the capital special assessments were proper, and the Series 2006A Bonds were in no way impaired and remained due in accordance with their terms. *See* Exhibit H.

62.     Additionally, in the Circuit Court Order, the Circuit Court required the District to properly notice and conduct a public hearing to re-levy capital special assessments taking into account the Circuit Court Order specifically affirming, among other things, the public purpose and benefit derived from the District-Owned Property, the terms of the Series 2006A Bonds, which remained unchanged, and the benefit derived to Grand Venezia condominiums and the two commercial properties from the District-Owned Property (the "**Public Hearing**").

63.     After obtaining an appraisal of the SPE Parcel, per the Court's instruction in the Circuit Court Order, and receiving public comment and testimony at the Public Hearing, the District levied new capital special assessments according to the Master Assessment Methodology and the Validation Judgment (the "**2018 Special Assessments**").

64.     Pursuant to the Indenture, upon adopting Resolution 2018-10[4] levying the 2018 Special Assessments in the amount of $6,723,233.46, the 2018 Special Assessments constituted 2006 Pledged Revenues and, therefore, immediately became property of the 2006 Trust Estate. The sole holder of all legal interest in and to the 2018 Special Assessments is the Trustee, acting on behalf of the 2006 Trust Estate.

65.     In accordance with the Circuit Court Order, on November 13, 2018, following the Public Hearing, the District and the Bondholders filed a Joint Motion for Final Judgment to approve the 2018 Special Assessments (the "**Joint Motion**").

66.     The adoption and levy of the 2018 Special Assessments, along with the filing of the Joint Motion, are the last legitimate exercises of power of the District in fulfilment of its obligations under the Indenture to the Trustee and the Bondholders.

67.     The Trustee has never intervened in or otherwise participated in the Dissolution Action.

---

[4] According to the original Master Assessment Resolution, the 2018 Special Assessments, were allocated to the remaining privately-owned properties within the District still subject to special assessments including: two (2) commercial parcels and the 336 units comprising the Grand Venezia condominium complex.

### E.    Homeowner Takeover of Board, Bankruptcy and Invalid 2019 Assessments

68.    Before the Court entered the Final Judgment as requested by, and stipulated to, in the Joint Motion, in November 2018, the District held board elections where three new board members were elected to the five-person Board: Don Dwyer, Pat O'Malley, and Michael Herd (together with two carry-over board members, Alan Glidden and Steven Whitehurst, the "**Takeover Board**").

69.    Remarkably, on January 24, 2019, the Takeover Board completely reversed course from the previous board and the positions stipulated to in the Joint Motion (the "**January 2019 Meeting**").

70.    Instead, at the January 2019 Meeting, the Takeover Board adopted Resolution 2019-09 in which it expressed "dissatisfaction" with the 2018 Special Assessments and "determine[d] to take steps to cause a new assessment to be made"[5] resulting in the Takeover Board undertaking proceedings to levy new assessments in direct contravention of the vested rights of the Trustee in the 2006 Trust Estate (the "**2019 Assessment Proceeding**"). Copies of Resolution 2019-09 and the transcript of the relevant portion of the January 2019 Meeting are attached as **Exhibits J and K**, respectively.

71.    Resolution 2019-09 (a) was made without any factual basis, (b) was a direct violation of the Assessment Obligations, and (c) constituted an additional Event of Default under the Indenture.[6]

---

[5] Ironically, the Takeover Board stated publicly during the January 2019 Meeting that the 2018 Special Assessments were legally valid and that the Takeover Board could return to such assessments and related methodology should the Takeover Board not like the result of the re-assessment effort.

[6] Pursuant to Section 1301 of the Master Indenture, all covenants of the District in the Master Indenture are deemed to be covenants of *any* governing body of the District.

72.     Furthermore, Resolution 2019-09 deprived the Trustee of its protected property rights in the 2018 Special Assessments as granted by the Indenture.

73.     In addition to the substantive violations detailed above, the January 2019 Meeting was rife with procedural violations as well.  The District failed to disclose and notice the Trustee or the Bondholders to attend.  Specifically, the District purposely failed to (a) publish statutory notice of the public hearing at least twenty (20) days in advance thereof, and (b) post an agenda of the public hearing, including the consultant reports and resolutions to be considered by the Takeover Board at the January 2019 Meeting.  *See* Fla. Stat. §§ 189.069; 197.3632(4)(b).

74.     In addition to Resolution 2019-09, and in an extraordinary effort to preclude the Trustee and Bondholders from protecting their property rights, the Takeover Board caused, without the requisite authority under Florida law, the District to file a voluntary petition for relief on June 4, 2019, under Chapter 9 of Title 11 of the United States Code (the "**Bankruptcy Proceeding**").

75.     The District's initiating the Bankruptcy Proceeding constitutes an Event of Default under Section 902(c) of the Master Indenture.  Further, the District, as a municipality as defined under the Bankruptcy Code[7], failed to obtain approval from the Governor of Florida before filing for bankruptcy relief as mandated by Florida Statute § 218.503(5).

76.     The principal purpose of the Bankruptcy Proceeding was to circumvent the Circuit Court's rulings in the Dissolution Action.  The Takeover Board sought to take advantage of the automatic stay provisions of the Bankruptcy Code to undertake proceedings to levy new special assessments in an amount substantially below the principal amount of the 2018 Special

---

[7] References to the Bankruptcy Code refer to 11 U.S.C. 101 *et. seq.*

Assessments. Worse still, the District even went so far as to refuse the turnover of public records relating to the 2019 Assessment Proceeding to the Trustee and the Bondholders during the Bankruptcy Proceedings in violation of Florida Statute Chapter 119.

77.    Because the Bankruptcy Proceeding failed to comply with applicable Florida law, it was dismissed.

78.    On September 10, 2019, the Takeover Board adopted Resolution 2019-17 (the "**2019 Assessment Resolution**"), which *purports* to approve, certify, confirm and levy special assessments (the "**2019 Special Assessments**") under color of state law pursuant to Chapters 170, 190, and 197, Fla. Stat.  A copy of the 2019 Assessment Resolution is attached as **Exhibit L**. (The 2019 Assessment Proceeding, the 2019 Assessment Resolution, and the 2019 Special Assessments are collectively referred to herein as the "**2019 Board Resolutions**").

79.    The 2019 Special Assessments are invalid as a matter of law for, among other reasons, failure to comply with the notice requirements under Florida law.

80.    The 2019 Special Assessments have no correlation to the 2018 Special Assessments or the Master Assessment Resolution and ignored both the ruling in the Validation Proceeding and the decision of the Circuit Court in the Dissolution Action.

81.    The 2019 Special Assessments violate the Assessment Obligations in the Indenture by reducing the amount of special assessments to the point where the special assessments are inadequate to pay the remaining principal and interest on the Series 2006A Bonds. The violation of the Assessment Obligations is a clear Event of Default under the Indenture and deprives the Trustee of property rights granted by that instrument.

**F.      The Takeover Board's Complete Elimination of the Special Assessments**

82.      Several months later, in an even more shocking development, in its meeting on August 11, 2022, in conjunction with the approval of the Fiscal Year 2023 Budget, the District adopted Resolution 2022-05 and Resolution 2022-06 (the "**Elimination Resolutions**").

83.      The Elimination Resolutions reduced the special assessments allocable to the Series 2006A Bonds to **zero.**

84.      At this time, the Takeover Board consisted of Dwyer, O'Malley, Glidden, and Whitehurst. Defendants Dwyer, O'Malley, and Whitehurst voted in favor of the Elimination Resolutions, with Glidden opposed and the Elimination Resolutions passed in a three to one vote (the "**2022 Board Action**").

85.       The Elimination Resolutions provide **_no revenues_** of any kind flowing to the District for the benefit of the Trustee and the Bondholders and implies no ongoing financial liability on the District's part.  Resolution 2022-05 and Resolution 2022-06 are attached hereto as **Exhibits M and N**, respectively.

86.      There was no notice, advertisement or publication to the Bondholders or the general public that the District was considering reducing the assessments at all, much less to zero, during the August 11, 2022 meeting.

87.      Indeed, according to the proposed budget circulated prior to the August 11, 2022 board meeting, debt assessments were budgeted to be approximately $294,030.  However, Dwyer specifically instructed District Manager, Cal Teague, not to post the budget (or an agenda) online prior to the August 11, 2022 meeting.

88.    Currently, the website for the District advises District residents that "As of the approval of the Fiscal Year 2023 Budget, the Board **has opted to not pay annual debt service**. . . ." (emphasis supplied). *See* https://clearwatercaycdd.com/assessments/.

89.    The District continues to own and benefit from the District-Owned Property financed by the Series 2006A Bonds while purposefully shunning its obligation to levy special assessments adequate to pay debt service on the Series 2006A Bonds.

90.    Individual Defendants, in taking action contrary to the contractual and legal obligations of the District, have acted outside the scope of their duties as public officials and are subject to liability for depriving the Trustee of property rights and of the benefit of property (i.e., special assessments) previously transferred to the Trustee for the purposes stated in the Indenture.

91.    Individual Defendants are each current residents of the District. Individual Defendants derived an improper personal benefit and engaged in self-dealing by their failure to levy and collect special assessments pledged to the Trustee in the Indenture to repay the Series 2006A Bonds. As residents of the District, Individual Defendants improperly benefit from the non-payment of the Series 2006A Bonds.

92.    There has been no payment from the District with respect to the Series 2006A Bonds since October 12, 2022, which such payment was applied to the October 2017 payment due under the terms of the Indenture.

93.    As of the filing of this Complaint, the District pursuant to the Indenture, owes the Trustee $13,900,000 of outstanding principal for the Series 2006A Bonds; $4,141,041.67 of accrued and unpaid interest due on the Series 2006A Bonds from November 1, 2017 to April 1, 2023; plus any other interest accrued; plus premium, if any; plus all other fees, charges and expenses of the Trustee, including without limitation the attorneys' fees and expenses of counsel and all fees,

expenses, costs, payments, and amounts incurred and to be incurred by the Trustee in the course of this case and these proceedings, all of which continue to accrue and are payable; plus all other amounts owed by the District pursuant to the Indenture.

G. **District's Refusal to Pay Series 2006A Bonds**

94.     Upon information and belief, the District does not have sufficient funds to make payment of the outstanding principal and interest on the Series 2006A Bonds, with its only revenue source being the special assessments which it has declined to levy and collect.

95.     Trustee's remedy at law for breach of the Indenture and default under the Series 2006A Bonds is inadequate because of the lack of resources of the District.  Trustee's only effective remedy is an action to require the District to levy the special assessments as required by the Indenture.

96.     Trustee has no other source for recovery for the amounts due under the Series 2006A Bonds and will suffer irreparable injury if the District does not fulfill its statutory and contractual obligation to levy special assessments for repayment of the Series 2006A Bonds.

97.     Under section 190.016(14) of the Florida Statutes, the State of Florida pledges CDD Bondholders that  it "will not limit or alter the rights of the district…to fulfill the terms of any agreement made with the holders of such bonds or other obligations *and that it will not in any way impair the rights or remedies of such holders*." (Emphasis added).

<u>**COUNT I**</u>
**BREACH OF CONTRACT – FAILURE TO PAY**
**(The District)**

98.     Trustee incorporates by reference and re-alleges the allegations in Paragraphs 1–97 as if fully set forth herein.

99.     The District and Trustee are parties to the Indenture.

23

100.    The Indenture constitutes the unqualified obligation of the District to make payment of principal and other amounts represented by the Series 2006A Bonds and represents a valid, binding, and enforceable obligation of the District.

101.    The District has defaulted under the terms of the Indenture by failing to make payments as required by the terms of the Indenture and the same are currently outstanding, unpaid and in default.

102.    As a result of the District's breaches, Plaintiff has been damaged in an amount equal to the outstanding principal, interest and other amounts due with respect to the Series 2006A Bonds.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on its behalf: (a) awarding damages for breach of the Indenture including pre-judgment interest; (b) awarding attorneys' fees and costs and expenses in accordance with the Indenture; and (c) awarding such other and further relief as it deems just and proper.

## COUNT II
## BREACH OF CONTRACT – FAILURE TO LEVY ASSESSMENTS
### (The District)

103.    Trustee incorporates by reference and re-alleges the allegations in Paragraphs 1–97 as if fully set forth herein.

104.    The Indenture constitutes a valid and binding contract of the District.

105.    Section 504 of the Master Indenture provides "[t]he District hereby covenants and agrees that it will assess, impose, establish and collect the Pledged Revenues with respect to each Series of Bonds in amounts and at times sufficient to pay, when due, the principal of, premium, if any, and interest on such Series of Bonds."

106.    Section 804 of the Master Indenture provides "[t]he District shall at all times, to the extent permitted by law, defend, preserve and protect the pledge and lien created by this Master Indenture and all rights of the Trustee and [Bondholders] hereunder against all claims and demands of all other persons whomsoever."

107.    Section 810 of the Master Indenture provides "[t]he District will assess, levy, collect or cause to be collected and enforce the payment of Assessments, Benefit Special Assessments and/or Maintenance Special Assessments which constitute Pledged Revenues for the payment of any Series of Bonds in the matter prescribed by this Master Indenture . . . in amounts as shall be necessary in order to pay, when due, the principal of and interest on the Series of Bonds to which such Pledged Revenues are pledged . . . ."

108.    Section 703 of the Second Supplemental Indenture provides "[i]n addition, and not in limitation of, the covenants contained elsewhere in this Supplemental Indenture and in the Master Indenture, the District covenants to comply with the terms of proceedings heretofore adopted with respect to the 2006 Assessments and to levy the 2006 Assessments and required payments under the "true up mechanism" set forth in the assessment methodology reports adopted by the District in connection with the Assessments, in such manner as will generate funds sufficient to pay the principal of and interest on the 2006A Bonds, when due."

109.    The District failed to levy, collect and remit to the Trustee special assessments in an amount sufficient to pay principal of and interest on the 2006A Bonds, when due.

110.    As a result of the District's breaches, Trustee has been damaged in an amount equal to the outstanding principal and interest payable with respect to the Series 2006A Bonds.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on its behalf: (a) awarding damages for breach of the Indenture including pre-judgment interest; (b) awarding

attorneys' fees and costs and expenses in accordance with the Indenture; and (c) awarding such other and further relief as it deems just and proper.

**COUNT III**
**MANDAMUS**
**(The District and the Board)**

111.    Trustee incorporates by reference and re-alleges the allegations contained in Paragraphs 1–97 as if fully set forth herein.

112.    The Trustee, on behalf of the 2006 Trust Estate, under the Indenture and the Assessment Covenants has an unqualified right to repayment of the Series 2006A Bonds.

113.    The District has an indisputable legal duty to perform and repay the Series 2006A Bonds and to comply with the mandatory terms of the Indenture to levy special assessments in an amount sufficient to repay the Series 2006A Bonds.

114.    The District is not answerable in damages and is otherwise unable to make payment of the Series 2006A Bonds without levying special assessments as required by the Indenture and Florida law.

115.    The Board has acted both within their duties as supervisors of the District and outside the scope of that authority to violate the provisions of the Indenture and the Act and to deprive Plaintiff of property rights without due process.

116.    Under Florida substantive law, a Writ of Mandamus is appropriate because the Trustee lacks another adequate legal remedy to compel the District and the Board to comply with the terms of the Indenture.

WHEREFORE Plaintiff requests that this Court enter judgment on its behalf: (a) issuing a Writ of Mandamus to the District and the Board compelling and directing them (i) to fulfill the legal duty of the District and, in the case of the Board, their duties as public officials, and (ii)

promptly to take all actions necessary to bring the District into compliance with the Indenture including, but not limited to, levying assessments in an amount sufficient to pay the Series 2006A Bonds; and (b) awarding attorney's fees in favor of the Trustee for bringing this action.

**COUNT IV**
**VIOLATION OF THE FEDERAL TAKINGS CLAUSE**
**UNDER 42 U.S.C. §§ 1983 AND 1988**
**(The District)**

117.     Trustee incorporates by reference and re-alleges the allegations contained in Paragraphs 1–97 as if fully set forth herein.

118.     The District is a local unit of special-purpose government established pursuant to the laws of the State of Florida.

119.     In consideration for Plaintiff's acceptance of the 2006 Trust Estate and the Bondholders' purchase and acceptance of the Series 2006A Bonds, the District, in the Indenture, irrevocably did "grant, bargain, sell, convey, transfer, assign and pledge to [Trustee], … all right, title and interest of the District, in, to and under, subject to the terms and conditions of the Master Indenture …, the 2006 Pledged Revenues … and the 2006 Pledged Funds and Accounts … which shall comprise part of the 2006 Trust Estate …; TO HAVE AND TO HOLD all the same by the Master Indenture granted, bargained, sold, conveyed, transferred, assigned and pledged, or agreed or intended so to be, to the Trustee … ."

120.     Upon adopting Resolution 2018-10 on August 15, 2018, in which the District levied the 2018 Special Assessments, the 2018 Special Assessments immediately constituted 2006 Pledged Revenues and, therefore, immediately became property of the 2006 Trust Estate.  The sole holder of all legal interest in and to the 2018 Special Assessments was the Trustee, acting on behalf of the 2006 Trust Estate.

121.     The District, acting under the color of state law, through the Takeover Board, intentionally, maliciously, willfully, and without justifiable cause or privilege (a) adopted Resolution 2019-09; (b) withdrew from the Joint Motion; (c) instituted, behind the shield of improperly filed Bankruptcy Proceedings, the 2019 Assessment Proceedings and adopted the 2019 Assessment Resolution; and (d) certified annual installments of assessments for collection based on the 2019 Special Assessments, not annual installments of assessments based on the 2018 Special Assessments. The District's actions resulted in a reduction of the 2006 Pledged Revenues below the 2018 Special Assessments to the value of the 2019 Special Assessments (the difference between the 2018 Special Assessments and the 2019 Special Assessments are defined as the "**First Assessment Taking**").

122.     The First Assessment Taking deprives the Trustee of its protected constitutional property rights in the 2006 Trust Estate – in which the Trustee had a legal interest for the benefit of the 2006 Trust Estate and the Bondholders had a beneficial interest – in violation of the Takings Clause of the Fifth Amendment to the United States Constitution, as applicable under the Fourteenth Amendment.

123.     The 2022 Board Action, in adopting the Elimination Resolutions, reduces the pledged 2019 Special Assessments to zero ( the "**Second Assessment Taking**", together with the First Assessment Taking, the "**Assessment Takings**"), depriving the Trustee of its entire right in and to substantially all of the property transferred to the Trustee under the Indenture.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on its behalf: (a) declaring the 2019 Board Resolutions and the 2022 Board Action as unconstitutional, impermissible, invalid, unenforceable, null and void ab initio; (b) awarding damages pursuant to 42 U.S.C. Sections 1983 and 1988; (c) awarding reasonable attorney's fees and costs to Plaintiff

as provided in said statutes in an amount to be determined at trial; and (d) awarding such other and further relief as it deems just and proper.

## COUNT V
### VIOLATION OF FEDERAL PROCEDURAL DUE PROCESS
### (The District)

124.    Trustee incorporates by reference and re-alleges the allegations contained in Paragraphs 1–97 as if fully set forth herein.

125.    The District is a local unit of special-purpose government established pursuant to Florida law.

126.    The conduct of the District and the Takeover Board, as alleged herein, has deprived the Trustee of its constitutionally-protected property interest in and to the Assessment Takings, by means of governmental action, without constitutionally-adequate process.

127.    Pursuant to section 190.022, Fla. Stat., special assessments levied to repay the bonds issued to finance the cost to acquire public lands and improvements, including the District-Owned Property, may use the procedures set forth in Chapters 170 or 197, Fla. Stat.; both include detailed requirements, including formal mailed and published notice of the hearing to interested parties, the opportunity to obtain additional information regarding the special assessments proposed to be levied and the purpose therefore, and the opportunity to be heard at the hearing.

128.    The District and the Takeover Board intentionally, maliciously, willfully, and without justifiable cause or privilege engaged in efforts to conceal the methodology by which it intended to allocate the 2019 Special Assessments by commencing the 2019 Assessment Proceedings with the 2008 Assessment Methodology; illegally refusing to provide public records regarding the 2019 Special Assessments prior to the hearing; and filing the Bankruptcy Proceedings as a "shield" by which to prevent the Trustee, on behalf of the 2006 Trust Estate, and

the Bondholders as the beneficial title holder of the Assessment Takings from objecting to same, and enacted the Elimination Resolutions without due process or notice to Trustee of the complete elimination of the special assessments.

129.    In failing to provide procedural due process as it relates to both the 2019 Board Resolutions and the 2022 Board Action, the District's conduct violates the Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable under the Fourteenth Amendment.

130.    The conduct of the District and Takeover Board in adopting the 2019 Board Resolutions and in taking the 2022 Board Action was deliberate and arbitrary because they intentionally disregarded (a) the cost of the District-Owned Property acquired using monies from the Series 2006A Bonds; (b) the public purpose of and benefit derived from the District-Owned Property; (c) prior Circuit Court rulings regarding (a) – (b) and the validity of special assessments levied to fund the cost of the District-Owned Property; (d) the Trustee's property interest in the 2018 Special Assessments; and (e) the District's covenants of the Trust Indenture, and the District and the Takeover Board did so while engaging in a conspiratorial effort to conceal the District's intent and actions behind the shield of the Bankruptcy Proceedings and in contravention of Florida law.

131.    Accordingly, pursuant to 42 U.S.C. § 1983 and 1988, Plaintiff is entitled to judgment against the District declaring the 2019 Board Resolutions and the 2022 Board Action as unconstitutional, impermissible, invalid, unenforceable, null and void ab initio; and awarding reasonable attorney's fees and costs to Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on its behalf: (a) declaring the 2019 Board Resolutions and 2022 Board Action as unconstitutional,

impermissible, invalid, unenforceable, null and void ab initio; (b) awarding reasonable attorney's fees and costs to Plaintiff in an amount to be determined at trial; and (c) awarding such other and further relief as it deems just and proper.

<u>**COUNT VI**</u>
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**
**(Individual Defendants)**

132.    Trustee incorporates by reference and re-alleges the allegations contained in Paragraphs 1–97 as if fully set forth herein.

133.    The District and the Trustee are parties to the Indenture and, therefore, a contractual relationship exists between them.

134.    At all times relevant to this complaint, Individual Defendants had actual knowledge of this contractual relationship.

135.    In the Master Indenture, the District covenanted, *inter alia*, to:

a.    "pay the amount of any [deficiency in the 2006 Reserve Account] to the Trustee, for deposit in such [2006 Reserve Account] …" Master Indenture at §509.

b.    "[pay] all [the Trustee's] reasonable expenses and disbursements, including reasonable fees and expenses of Trustee's counsel … and … indemnify the Trustee … and hold the Trustee … harmless against any liabilities, obligations, losses, damages, penalties, claims, actions, suits and costs it may incur in the exercise and performance of its powers and duties hereunder …."  Master Indenture at §604.

c.    "defend, preserve and protect the pledge and lien created by [the] Master Indenture and all rights of the Trustee and the [Bondholders] … against all claims and demands of all other persons whomsoever." Master Indenture at §804.

d.   "not sell, lease or otherwise dispose of or encumber the [District-Owned Property]
or any part thereof …" Master Indenture at §806.

e.   "not take any action, [or] fail to take any action, which action or failure would cause
the Tax Exempt Bonds to become "arbitrage bonds" as defined in Section 148 of
the Internal Revenue Code of 1986 … [and] will take all such actions after delivery
of the Tax Exempt Bonds as may be required for interest on such Tax Exempt
Bonds to remain excludable from gross income (as defined in Section 61 of the
Internal Revenue Code of 1986) of the [Bondholders]." Master Indenture at §809.

136.   Further, by way of the Indenture, the District conferred to the Trustee a legal
interest in and to the Trust Property comprising the 2006 Trust Estate, including the 2018 Special
Assessments.

137.   By intentionally, maliciously, willfully, and without justifiable cause or privilege
engaging in the wrongful activities described above including, without limitation, making incorrect
statements and failing to provide materially relevant information to the District and its consultants
– and the Circuit Court – regarding the District-Owned Property and related allocation of special
assessments; preventing public access to District-Owned Property; and preventing the District
from owning and maintaining the District-Owned Property for a public purpose; privatizing certain
property within the District intended for public access, Individual Defendants, have interfered with
the District's ability to comply with its covenants under the Trust Indenture and the Trustee's
ability to enforce same, and interfered with the Trustee's legal title in and to the Trust Property
and the 2006 Trust Estate.

138.   The Individual Defendants, as residents of the District, improperly engaged in self-
dealing for their personal benefit in failing to levy assessments.

32

139.    As a direct and proximate result of the intentional, malicious, willful, and without justifiable cause or privilege activities of Individual Defendants, the Trustee and the 2006 Trust Estate have suffered significant damages that will be proven at trial.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on its behalf against Individual Defendants: (a) awarding damages; and (b) awarding such other and further relief as it deems just and proper.

Dated: April 17, 2023

**BURR FORMAN, LLP**

*/s/ J. Ellsworth Summers, Jr.*
J. Ellsworth Summers, Jr., Esq.
Florida Bar No. 0015769
Dana L. Robbins, Esq.
Florida Bar No. 106626
Burr & Forman LLP
50 North Laura Street, Suite 3000
Jacksonville, Florida 32202
Phone: (904) 232-7200
Fax: (904) 232-7201
E-mail: ESummers@burr.com
E-mail: Drobbins@burr.com

Attorneys for U.S. BANK TRUST
COMPANY, NATIONAL ASSOCIATION,
a national banking association, in its
capacity as Trustee pursuant to the Indenture
herein referenced